O

# United States District Court
# Central District of California

JENNIFER RITTENHOUSE SNODDY et al.,

               Plaintiffs,

     v.

TEEMA et al.,

               Defendants.

Case № 2:25-cv-08722-ODW (PDx)

**ORDER GRANTING MOTION FOR SANCTIONS [8] AND GRANTING APPLICATION FOR ATTORNEYS' FEES [31]**

## I.    INTRODUCTION

On September 15, 2025, Plaintiff Jennifer Rittenhouse Snoddy, assisted by her former counsel, Reshma Kamath, filed this action against Defendants TEEMA, Jeremy Brown, Brian Steve Reimer, and Brian Antenbring. (Compl., Dkt. No. 1.) TEEMA now brings this Motion for Sanctions, alleging that Snoddy and Kamath brought this action in this Court to avoid the consequences of the U.S. District Court for the Northern District of California having disbarred Kamath. (Mot. Sanctions ("Motion" or "Mot."), Dkt. No. 8.) On February 3, 2026, the Court held a hearing on the Motion and heard argument from Snoddy and TEEMA. (Mins., Dkt. No. 28.) For the following reasons, the Court **GRANTS** TEEMA's Motion and **SANCTIONS** both Snoddy and Kamath in the amount of TEEMA's reasonable attorneys' fees.

## II.    BACKGROUND

In October 2018, a TEEMA representative contacted Snoddy, who owned non-party staffing and recruitment business Preferred LLC, about potentially joining its business platform.  (Compl. ¶¶ 10–11.)  On October 31, 2018, Snoddy, Teema, and Preferred LLC executed the Member Master Vendor Agreement ("MVA").  (Decl. Steve Reimer ISO Mot. Ex. 1 ("MVA"), Dkt. No. 8-3.)  Under the MVA, Preferred LLC, assisted by Snoddy, agreed to provide its staffing and recruiting services to TEEMA, which would provide backend support to Preferred LLC.  (*Id.*)

On October 1, 2020, the California Franchise Tax Board suspended Preferred LLC.  (Req. Judicial Notice ISO Mot. ("RJN Mot.") Ex. I ("Preferred LLC SOS Record"), Dkt. No. 8-1.)[1]  The suspension did not appear to impact the parties' performance under the MVA.  (*See* Compl. ¶¶ 18–22.)  However, in October 2024, Snoddy notified TEEMA that she wished to terminate the MVA.  (*Id.* ¶ 24.)  After the termination, Snoddy alleges that TEEMA seized her client relationships and ongoing contracts, forcing her to restart her business from scratch.  (*Id.* ¶¶ 29–33.)

On April 17, 2025, Snoddy and Preferred Staffing, Inc.—a different entity than Preferred LLC and not party to the MVA, but also owned by Snoddy—sued TEEMA, Brown (TEEMA's CEO), Antenbring (TEEMA's owner), and Reimer (TEEMA's COO) in the Superior Court of California, County of Contra Costa.  (RJN Mot. Ex. A ("State Compl."), Dkt. No. 8-1.)  Kamath represented Snoddy and Preferred Staffing.  (*Id.* at 1.)  In their complaint, Snoddy and Preferred Staffing alleged that they both resided in Contra Costa County, and that the actions alleged in the suit arose in Contra Costa County.  (*Id.* ¶¶ 1–2, 9.)  Snoddy also signed a verification, on behalf of herself and Preferred Staffing, stating that she "read the [complaint]" and that the "matters stated therein are true of [her] own knowledge."  (*Id.* at 13.)

---

[1] The Court **GRANTS** TEEMA's Request for Judicial Notice because each exhibit is easily ascertainable through official public records searches.  (RJN Mot.); Fed. R. Evid. 201(b)(2).

2

On May 30, 2025, TEEMA removed the case to federal court, the U.S. District Court for the Northern District of California.  (RJN Mot. Ex. B ("NOR"), Dkt. No. 8-1.)  However, Kamath could not continue to represent Snoddy due to Kamath's August 29, 2024 disbarment by the Northern District.  (RJN Mot. Ex. C ("Notice Disbarment"), Dkt. No. 8-1.)   Thus, on June 2, 2025, TEEMA notified the court of Kamath's disbarment in the Northern District.  (*Id.*)  TEEMA also moved to dismiss the complaint, arguing, among other things, that Preferred LLC was an indispensable party to the litigation and that Preferred Staffing did not have standing to sue because it was not a signatory to the MVA.  (RJN Mot. Ex. E ("N.D. Cal. MTD") 4–7, 13, 21, Dkt. No. 8-1.)

On June 9, 2025, Magistrate Judge Kandis Westmore ordered Kamath to show cause why she should not be removed from the case as counsel.  (RJN Mot. Ex. D ("N.D. Cal. OSC"), Dkt. No. 8-1.)  Kamath failed to respond.  (RJN Mot. Ex. F ("N.D. Cal. Order"), Dkt. No. 8-1.)  Instead, on June 24, 2025, Snoddy and Preferred Staffing, represented by Kamath, filed a nearly identical complaint in the U.S. District Court for the Central District of California.  (RJN ISO Reply Ex. B ("First C.D. Cal. Compl."), Dkt. No. 26-4.)  In this complaint, Snoddy and Preferred Staffing continued to allege that they both resided in Contra Costa County.  (*Id.* ¶¶ 1–2.)  However, they now alleged that venue was proper in the Central District because they "do[] business in Long Beach."  (*Id.* ¶ 9.)

Recognizing this inconsistency, the Court ordered Snoddy and Preferred Staffing to show cause why the action should not be dismissed for improper venue.  Order Show Cause, *Snoddy v. Teema*, No. 2:25-cv-05745-ODW (PDx), (C.D. Cal. June 27, 2025), Dkt. No. 11 ("First C.D. Cal. OSC").  On July 18, 2025, after Snoddy and Preferred Staffing failed to timely respond, the Court dismissed the action without prejudice.  Min. Order, *Snoddy v. Teema*, No. 2:25-cv-05745-ODW (PDx), (C.D. Cal. July 18, 2025), Dkt. No. 15.

On September 14, 2025, Snoddy and Preferred Staffing, still represented by Kamath, filed this second action in Central District of California. (Compl.) The Complaint here contains almost identical factual allegations and causes of action as the previous two actions, except the Complaint is now devoid of any mention of Contra Costa County. (*See generally id.*) Instead, Snoddy and Preferred Staffing allege that "a substantial part of the events or omissions giving rise to the claims occurred in [the Central District]." (*Id.* ¶ 9.) Snoddy again verified the Complaint, certifying that she read it and believed the factual allegations to be true. (*Id.* at 25.)

On November 20, 2025, TEEMA filed this Motion, seeking sanctions against Snoddy and Kamath under Federal Rule of Civil Procedure ("Rule") 11. (Mot.) On November 25, 2025, in light of Kamath's suspension from the State Bar[2], the Court ordered Snoddy and Preferred Staffing to show cause why the action should not be dismissed. (Order Show Cause, Dkt. No. 13.) After Snoddy stated that she intended to represent herself, the Court dismissed Preferred Staffing and ordered both Snoddy and Kamath to respond to this pending Motion. (Min. Order, Dkt. No. 15.) Snoddy, now represented by new counsel, opposed the Motion. (Opp'n, Dkt. No. 24.) However, Kamath failed to respond.

### III.    LEGAL STANDARD

"[T]he central purpose of Rule 11 is to deter baseless filings in district court and . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Properly construed, Rule 11 sanctions are "an extraordinary remedy" reserved for "the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation,

---

[2] On June 20, 2025, the California State Bar filed a Notice of Disciplinary Charges in State Bar Court, charging Kamath with twenty-six counts alleging various violations of the California Business and Professions Code. Notice Disciplinary Charges ¶¶ 2–87, *In the Matter of: Reshma Kamath*, No. SBC-25-O-30735 (State Bar Ct. Cal. June 20, 2025). On October 30, 2025, after Kamath failed to substantively respond to the allegations, the State Bar Court entered Kamath's default and ordered her involuntary enrollment as an inactive attorney of the California State Bar. Order Entering Default and Order Enrolling Inactive, *In the Matter of: Reshma Kamath*, No. SBC-25-O-30735 (State Bar Ct. Cal. Oct. 30, 2025).

4

or brought for an improper purpose." *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1344–45 (9th Cir. 1988). "Rule 11 must not be construed so as to conflict with the primary duty of an attorney to represent his or her client zealously." *Id.* at 1344.

Sanctions under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Sanctions "may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.*

## IV.   DISCUSSION

The Court finds that Kamath violated Rule 11 and that Snoddy's conduct requires monetary sanctions against both Kamath and Snoddy.

### A.   Kamath's Rule 11 Violations

TEEMA argues that Kamath violated Rule 11(b)(3) and 11(b)(1).[3] (Mot. 5–11.) Under Rule 11(b)(3), when an attorney files a paper with the court, the attorney certifies that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Under Rule 11(b)(1), the attorney further certifies that the paper "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."[4]

---

[3] TEEMA also argues that Snoddy violated Rule 11. (Mot. 1.) However, only "an attorney or unrepresented party" can violate Rule 11. Fed. R. Civ. P. 11(b).

[4] Although Snoddy does not dispute it, the Court finds that TEEMA has complied with Rule 11's safe-harbor provision. *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 826 (9th Cir. 2009) ("A Rule 11 motion for sanctions must be served on opposing counsel twenty-one days before filing the motion with the court"). On September 26, 2025, TEEMA's counsel served Kamath with a letter and draft of this Motion. (Decl. Deborah Hedley ISO Mot. Ex. 1 ("Safe Harbor Letter"), Dkt. No. 8-2.) TEEMA requested Kamath dismiss the Complaint. (*Id.* at 2.) Kamath failed to do so, and TEEMA filed this Motion on November 20, 2025, well beyond the twenty-one day safe-harbor period. (Mot.)

*1.    Rule 11(b)(3)—Misrepresentations in the Complaint*

TEEMA argues that Kamath violated Rule 11(b)(3) in two ways when she filed the Complaint in this action.  First, TEEMA argues that Kamath had no factually supportable basis for asserting that venue was appropriate in the Central District.  (*Id.* at 5–8.)  Second, TEEMA argues that Kamath improperly brought claims on behalf of the wrong entity, Preferred Staffing, because California had suspended the correct entity, Preferred LLC.  (*Id.* at 8–10.)  Although venue and standing are legal arguments, because TEEMA attacks the factual misrepresentations underlying these legal arguments, this portion of the Motion is properly brought under Rule 11(b)(3).

When a complaint is the primary focus of Rule 11 proceedings, a district court must conduct a "two-prong inquiry" by asking (1) "whether the complaint is legally or factually 'baseless' from an objective perspective," and (2) whether the attorney failed to conduct a "'reasonable and competent inquiry' before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (quoting *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997)).  Courts impose Rule 11 sanctions only when the answer to both questions is affirmative.  *See Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) ("[T]he word 'frivolous' . . . 'denote[s] a filing that is *both* baseless *and* made without a reasonable and competent inquiry.'" (quoting *Moore v. Keegan Mgmt. Co.*, 78 F.3d 431, 434 (9th Cir. 1996))).

a.    <u>Venue in the Central District</u>

TEEMA first argues that Kamath violated Rule 11 when she asserted in the Complaint that venue is proper in the Central District.  (Mot. 5–8.)  Generally, venue is proper in a district where any defendant resides or where a "substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(1)–(2).  TEEMA argues that a cursory investigation would have revealed that no events or omissions occurred in this District, making venue improper.  (Mot. 7–8.)

The Complaint contains the allegation that "[v]enue is proper in this District . . . because a substantial part of the events or omissions giving rise to the claims occurred

in this judicial district." (Compl. ¶ 9.)  Snoddy concedes that "the parties in this lawsuit had no connection to the Central District of California" and that the "filing of this lawsuit in the Central District was legal error for improper venue."  (Opp'n 3.)  TEEMA's evidence supports this concession.  Neither TEEMA nor Snoddy were based in the Central District at the time they signed the MVA.  (MVA 1.)  Snoddy also makes no allegations in the Complaint that would tie any of TEEMA's actions, post-signing, to the Central District.  (*See generally* Compl.)  Moreover, Snoddy initially alleged that "the obligations or liabilities [that] arose" from TEEMA's alleged actions emerged from within Contra Costa County.  (State Compl. ¶ 9.)  Thus, Kamath had no objective basis for believing that venue was proper in the Central District.

Snoddy also concedes that Kamath "failed to engage in a reasonable inquiry as to the appropriate venue."  (Opp'n 3.)  The record also supports this concession.  A cursory look at the MVA would reveal to any reasonable and competent attorney that the parties are not based in the Central District.  (MVA 1.)  Instead, as explained below, it is more likely that Kamath knew that venue was proper only in the Northern District, but decided to file in the Central District instead.

Thus, the Court finds that Kamath violated Rule 11 because the venue allegations in the Complaint are factually baseless and a reasonable and competent inquiry would have revealed the infirmity.

### b.    Preferred Staffing and Preferred LLC

TEEMA next argues that Kamath violated Rule 11 by asserting that Preferred Staffing was a party to the MVA.  (Mot. 8–10.)  According to TEEMA, Kamath named Preferred Staffing, instead of Preferred LLC, because California suspended Preferred LLC, rendering it unable to sue in court.  (Mot. 9–10; Preferred LLC SOS Record); *see Kaufman & Broad Cmtys., Inc. v. Performance Plastering, Inc.*, 136 Cal. App. 4th 212, 217 (2006) (holding that California law does not allow suspended corporations to sue or defend a lawsuit while its taxes remain unpaid).  TEEMA argues that, by replacing Preferred LLC with Preferred Staffing, Kamath attempted to sidestep the Constitution's

standing requirement.  (Mot. 8–10); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (holding that the Constitution requires plaintiffs to have, at a minimum, suffered an injury fairly traceable to the defendant).

Snoddy concedes that Kamath should not have named Preferred Staffing.  (*See* Opp'n 2.)  Indeed, it was Preferred LLC, not Preferred Staffing, that entered into the MVA.  (MVA 1.)  Thus, every assertion in the Complaint that Preferred Staffing entered into the MVA is objectively baseless.  (*See, e.g.*, Compl. ¶¶ 5, 14–16.)  Moreover, a "reasonable and competent" inquiry would have revealed this fact; Kamath could have simply looked at the first page of the MVA to confirm the parties' identities.  (MVA 1.)  Thus, the Court finds that Kamath violated Rule 11(b)(3) when she brought claims on behalf of Preferred Staffing and represented to the Court that it, not Preferred LLC, signed the MVA.

### 2.   *Rule 11(b)(1)—Improper Purpose*

TEEMA also argues that Kamath brought this action for an improper purpose— specifically, forum shopping—thus violating Rule 11(b)(1).  (Mot. 10–11.)  "[T]he test for improper purpose is objective."  *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1365 (9th Cir. 1990).  Courts have found that "blatant example[s] of forum shopping" can constitute improper purpose.  *See, e.g.*, *China Healthways Inst., Inc. v. Hsin Ten Enter. USA, Inc.*, No. 2:02-cv-05493-LGB (JWJx), 2003 WL 21982477, at *8 (C.D. Cal. Mar. 12, 2003) (quoting *Fransen v. Terps LLC*, 153 F.R.D. 655, 660 (D. Colo. 1994)).

The timeline here supports TEEMA's allegation that Kamath engaged in blatant forum shopping.  On June 9, 2025, a magistrate judge in the Northern District of California ordered Kamath to show cause why she should not be removed as counsel in light of her disbarment from that Court.  (N.D. Cal. OSC.)  Rather than responding, on June 24, 2025, Kamath filed a nearly identical action with this Court in the Central District of California.  (First C.D. Cal. Compl.)  When this Court noticed that the Northern District of California appeared to be the appropriate forum for the action,

(First C.D. Cal. OSC), Kamath filed a third case, the instant Complaint, and stripped out every allegation that would connect the action to the Northern District of California, (*see generally* Compl.). Kamath's actions suggest that she wanted to avoid the Northern District of California at all costs. Considering that the Northern District of California disbarred her, the reasonable and unrebutted inference is that Kamath wanted to avoid the Northern District of California because she could not practice there. This blatant forum shopping constitutes an improper purpose, and the Court finds that Kamath violated Rule 11(b)(1) by engaging in such forum shopping.

**B.      Monetary Sanctions**

As the Court concludes that Kamath violated Rule 11, "sanctions are mandatory." *Pipe Trades Council of N. Cal. v. Underground Contractors Ass'n of N. Cal.*, 835 F.2d 1275, 1280 (9th Cir. 1987). Rule 11 sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). For example, a court "may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2); *China Healthways*, 2003 WL 21982477, at *14.

In determining an appropriate amount of sanctions, courts consider, among other things, "[w]hether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading[;] . . . whether the responsible person is trained in the law; . . . [and] what amount is needed to deter similar activity by other litigants." Fed. R. Civ. P. 11, Advisory Comm. Notes (1993 Amendments), subdivisions (b) and (c); *Christian*, 286 F.3d at 1126 n.4 (citing to the advisory committee notes of the 1993 amendments). For example, courts have imposed sanctions under Rule 11(b)(3), which requires that "factual contentions have evidentiary support," when a party "knowingly provide[s] false facts to the Court." *Alsa Refinish v. Home Depot, Inc.*, No. 2:23-cv-09965-SVW (MARx), 2025 WL 2231027, at *1 (C.D. Cal. June 6, 2025).

*1.      Type of Sanctions*

TEEMA asks the Court to impose monetary sanctions in the amount of its attorneys' fees incurred in bringing this Motion. (Mot. 11–13.) The Court agrees that sanctions in the amount of TEEMA's attorneys' fees are appropriate. But for Kamath's Rule 11 violations, TEEMA would not have been forced to respond in the Central District of California and bring this Motion. Sanctions in the amount of attorneys' fees sends a clear message to litigants that courts will not tolerate willful misrepresentations in pleadings.

### 2.    *Liability*

TEEMA also asks the Court to impose the requested sanction jointly and severally against Kamath and Snoddy. (Mot. 13; *see generally* Reply, Dkt. No. 26.)

#### a.    Kamath's Liability

First, the Court holds Kamath liable for all the Rule 11 sanctions. The evidence compellingly demonstrates that Kamath misrepresented certain facts—specifically, those associated with venue—to avoid the Northern District of California and the consequences of her disbarment there. This willful conduct alone warrants imposition of severe sanctions. Moreover, her failure to sue on behalf of the correct entity— Preferred LLC, not Preferred Staffing—is reckless at best, and willful at worst. Finally, Kamath's pattern of contempt for the judicial system, as evidenced by her forum shopping here and as laid out in the State Bar's Notice of Disciplinary Charges, requires severe sanctions. Although Kamath is no longer in good standing with the state bar and therefore cannot practice in any California courts, this has not stopped Kamath in the past as she continued filing in the Northern District of California even after her disbarment. Thus, the Court sends a message to Kamath and to other similarly situated attorneys that willful violations of Rule 11 will result in sanctions.

#### b.    Snoddy's Liability

With regards to Snoddy, the Court imposes one-third of the total Rule 11 sanction jointly and severally against her. A represented party may be held liable if a Rule 11 violation is one other than or in addition to frivolous contentions of law. Fed. R. Civ.

P. 11(c)(5)(A).  For example, where the represented party "was the catalyst" behind counsel's Rule 11 violation, sanctions "properly fall[] on [the represented party]." *Chevron, U.S.A., Inc. v. Hand*, 763 F.2d 1184, 1187 (10th Cir. 1985); *see Pan-Pac. & Low Ball Cable Television Co. v. Pac. Union Co.*, 987 F.2d 594, 597 (9th Cir. 1993) (affirming sanctions against a represented party that was the "catalyst" behind a Rule 11 violation).

First, the false venue allegations in the Complaint are the consequences of Kamath's attempt to escape the Northern District of California's disbarment.  Thus, Snoddy cannot be the "catalyst" behind the venue misrepresentations.  Second, the Court finds no evidence in the record demonstrating that Snoddy proactively suggested that Kamath re-file in the Central District so that Kamath could continue to prosecute the case.  Thus, Snoddy also is not the "catalyst" behind Kamath's "improper purpose."

However, the Court holds Snoddy liable for misrepresenting Preferred Staffing's role in this litigation because she was "better positioned" to correct the record.  *Bus. Guides v. Chromatic Commc'ns. Enters.*, 498 U.S. 533, 549 (1991) ("Quite often it is the client, not the attorney, who is better positioned to investigate the facts supporting a paper or pleading.").  Snoddy is the agent of both Preferred LLC and Preferred Staffing.  (*See* Preferred LLC SOS Record; RJN ISO Mot. Ex. J ("Preferred Staffing SOS Record"), Dkt. No. 8-1.)  This makes her "well-positioned to investigate the facts supporting [her] claims," specifically, the ones relating to these entities' standing to sue.  *See Pan-Pac.*, 987 F.2d at 597.  Thus, Snoddy must have known that Preferred LLC was the entity that entered the MVA, not Preferred Staffing, so her ratification of the Complaint containing contrary assertions exposes her to liability under Rule 11.  (Compl. at 25 (Snoddy verification).)

At the hearing on this Motion and in a supplemental declaration, Snoddy repeatedly emphasized that Preferred Staffing is successor in interest to Preferred LLC.  (*See* Suppl. Decl. Jennifer R. Snoddy ("Suppl. Snoddy Decl."), Dkt. No. 29.)  She seemingly argues that she should be held blameless for signing pleadings improperly

naming one entity over the other because she deems them interchangeable. (*See generally id.*)

This argument is unavailing. The pleadings contain false allegations that Preferred Staffing entered the MVA when, in fact, it had not.[5] (*See, e.g.*, Compl. ¶¶ 12, 14.) While Preferred Staffing could have standing to bring claims on behalf of Preferred LLC—and the Court takes no position on whether it can—that *possibility* does not nullify the factual falsehoods in the pleading. Nor does it obviate Snoddy's duty to ensure that the factual allegations submitted are true to the best of her knowledge. Finding otherwise would disincentivize clients from ensuring that the pleadings and papers they sign are factually supported.

For these reasons, the Court imposes sanctions in the amount of TEEMA's reasonable attorneys' fees. The Court imposes two-thirds of TEEMA's reasonable attorneys' fees as monetary sanctions on Kamath, individually, for her venue misrepresentations and for bringing this action for an improper purpose. The Court also imposes one-third of the requested fees as monetary sanctions on Snoddy and Kamath, jointly and severally, for the misrepresentations regarding Preferred Staffing's standing.

## C. Amount of Sanctions

An attorneys' fee award as a Rule 11 sanction is "governed by normal considerations delimiting what constitutes a 'reasonable' level of attorneys' fees and costs." *Truesdell v. S. Cal. Permanente Med. Grp.*, 209 F.R.D. 169, 178 (C.D. Cal. 2002). Courts use the "lodestar" method to arrive at a reasonable attorneys' fee award. *See id.* To calculate the "lodestar" figure, courts must multiply "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1157 (9th Cir. 2002).

---

[5] Further, the Complaint also contains the allegation that Preferred Staffing has been in operation for "over thirty (30) years." (Compl. ¶ 3.) However, Snoddy attaches Preferred Staffing's Articles of Incorporation that plainly contradict this factual allegation, further undercutting her argument and her credibility. (*See* Suppl. Snoddy Decl. Ex. A, Dkt. No. 29 (revealing that Preferred Staffing's incorporation date was February 26, 2021).)

TEEMA requests the following attorneys' fees incurred in defending against this action:

| Attorney/Paralegal | Lodestar Hours | Lodestar Rate | Lodestar Total |
|---|---|---|---|
| A. Lessa (2026) | 9.3 | $770.00 | $7,161.00 |
| A. Lessa (2025) | 17.8 | $711.00 | $12,655.80 |
| D. Groden (2026) | 5.9 | $644.00 | $3,799.60 |
| D. Groden (2025) | 5.1 | $581.00 | $2,963.10 |
| D. Hedley (2026) | 19.5[6] | $621.00 | $12,109.50 |
| D. Hedley (2025) | 18.6 | $581.00 | $10,806.60 |
| A. McCain | 13.7 | $387.00 | $5,301.90 |
| M. Clipper (paralegal) | 1.8 | $284.00 | $511.20 |
| **TOTAL** | **91.7** | | **$55,308.70[7]** |

(*See* Appl.; Hedley Decl.; Billing Records.)

1.    *Hourly Rates*

"[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "Generally, the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). If the moving party fails to provide affidavits from "local attorneys or from a fee expert" to show that the requested rates match the prevailing market rates, the district court may rely on its "own knowledge of customary

---

[6] On February 10, 2026, Hedley billed 0.7 hours but charged $0.00. (Decl. Deborah A. Hedley ISO Appl. Att'ys' Fees ("Hedley Decl.") Ex. A ("Billing Records") 5, Dkt. No. 31-1.) Thus, the Court subtracts **0.7** hours from the total hours Hedley billed in 2026.

[7] The Court's calculation, based on the hours expended based on the billing records and each attorney's rates, is slightly lower than the figure TEEMA calculates. (*See* Appl. Att'ys' Fees ("Appl.") 2, Dkt. No. 31 (requesting $55,486.90 in fees).) The Court arrives at this figure based on the rates that Hedley attests to in her declaration, (Hedley Decl. ¶¶ 3–6, Dkt. No. 31-1), and suspects that these calculations deviate because McCain's rates, like the other attorneys' rates, also changed between 2025 and 2026. As Hedley fails to account for this rate change in her declaration, the Court starts from its own calculation using only the rates that Hedley provides.

rates" and its "familiarity with the legal market." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Here, TEEMA requests rates ranging from $770.00 to $387.00 for its four attorneys, three of whom have over a decade of experience practicing law. (Hedley Decl. ¶¶ 3–6.) To support the requested attorneys' rates, TEEMA cites several federal district court cases where courts awarded similar rates. (*See* Appl. 2–3.) TEEMA also cites the Real Rate Report, (*see id.* at 3), which several district courts have found to be a "much better reflection of true market rates than self-reported rates in all practice areas," *see Grant & Eisenhofer, P.A. v. Brown*, No. 2:17-cv-5968-PSG (AFMx), 2018 WL 4945303, at *2 (C.D. Cal. May 14, 2018) (collecting cases). According to TEEMA, in 2023, the Real Rate Report set forth that employment litigation partners in Los Angeles billed at rates of $981.00 to $535.00 per hour, and associates at $835.00 to $385.00 per hour. (Appl. 3.) Based on the above, and on the Court's own knowledge of customary rates and familiarity with the Los Angeles legal market, the Court finds that TEEMA's requested attorney rates are reasonable.

However, the Court is unable to confirm the reasonableness of TEEMA's requested rate for its paralegal, Monica Clipper. TEEMA requests an hourly rate of $284.00 for Clipper but fails to cite any cases or other empirical evidence to support the reasonableness of this rate. Moreover, TEEMA does not support Clipper's experience with any detail or offer what, if anything, would justify Clipper's rate. Thus, the Court adjusts Clipper's rate to **$150.00**, which the Court finds to be a reasonable rate in the Los Angeles legal market.

*2.    Hours Expended*

In analyzing the reasonableness of hours expended, the Court must examine detailed time records to determine whether the hours claimed are adequately documented and whether any of them are unnecessary, duplicative, or excessive. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983)), *op. am. on denial of reh'g*, 808 F.2d 1373

(9th Cir. 1987). The trial court, due to its familiarity with the case, is in the best position to evaluate the reasonableness of the hours requested. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008).

TEEMA attaches detailed time records spanning both actions filed in the Central District. (Billing Records.) The Court has reviewed the records and finds that the hours claimed are reasonable. The records reflect no more time worked than necessary to research for and file this Rule 11 motion, gather evidence, prepare for oral argument, and respond to Plaintiffs' filings. (*See generally id.*)

In sum, the lodestar calculation is as follows:

| Attorney/Paralegal | Lodestar Hours | Lodestar Rate | Lodestar Total |
|---|---|---|---|
| A. Lessa (2026) | 9.3 | $770.00 | $7,161.00 |
| A. Lessa (2025) | 17.8 | $711.00 | $12,655.80 |
| D. Groden (2026) | 5.9 | $644.00 | $3,799.60 |
| D. Groden (2025) | 5.1 | $581.00 | $2,963.10 |
| D. Hedley (2026) | 19.5 | $621.00 | $12,109.50 |
| D. Hedley (2025) | 18.6 | $581.00 | $10,806.60 |
| A. McCain | 13.7 | $387.00 | $5,301.90 |
| M. Clipper (paralegal) | 1.8 | $150.00 | $270.00 |
| **TOTAL** | **91.7** | | **$55,067.50** |

**3.    *Reasonableness***

After computing the "lodestar," courts may adjust the figure upward or downward by considering the "reasonableness" factors. *Evon v. Law Offs. of Sidney Mickell*, 688 F.3d 1015, 1033 n.11 (9th Cir. 2012). The reasonableness factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the

nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.*

After thoroughly considering the applicable factors, the Court sees fit to impose a 10% haircut reduction to TEEMA's fees. *See Moreno*, 534 F.3d at 1112 (noting that a "district court can impose a small reduction, no greater than [ten] percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation"). In applying this haircut, the Court considered factors including the relative simplicity of the matter and that three of the four billing attorneys were senior attorneys with over ten years of experience, each.

Thus, after applying for the 10% haircut reduction, the Court awards TEEMA **$49,560.75** in attorneys' fees.

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** TEEMA's Motion and Application for Attorneys' Fees. (Dkt. Nos. 8, 31.)  The Court **SANCTIONS** Kamath in the amount of **$49,560.75** and holds Snoddy **JOINTLY** and **SEVERALLY LIABLE** for one-third of this amount, or **$16,520.25**.  The sanctions shall be paid to TEEMA within **thirty (30) days** of the entry of this Order.

**IT IS SO ORDERED.**

March 20, 2026

_____
    **OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**